UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

                                  :

ALEXANDRIA FITZGERALD,           :

                                  :    1:20-cv-05260

                   Plaintiff,       :

                                  :

          -against-          :

                                  :

THE WE COMPANY d/b/a WEWORK, DAVID  :

STILES and DANNY DUONG, in their      :

Individual and professional capacities,  :

                                :

                 Defendant.    :

                                :

---------------------------------------------------------------- X

<br>

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

<br><br>

**EPSTEIN BECKER & GREEN, P.C.**
875 Third Avenue
New York, NY 10022
Telephone:  (212) 351-4500
*Attorneys for Defendants*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

    A.    WeWork Hired Plaintiff for a Program Management Organization
Position ................................................................................................ 2

    B.    Fitzgerald's Internal Complaint About Stiles And WeWork's
Response ............................................................................................... 2

            1.    Plaintiff Reports an Uncomfortable Experience with Stiles ...................... 3

            2.    WeWork's People Department Promptly Investigates ............................. 4

            3.    WeWork Disciplines Stiles ................................................................... 6

    C.    Between The Summer Of 2019 And The Fall Of 2020, WeWork
Reorganized And Suffered Significant Layoffs ....................................... 7

ARGUMENT .......................................................................................................... 12

I.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS BASED
ON SEX SHOULD BE DISMISSED. .................................................... 12

    A.    Plaintiff's Hostile Environment Claims Under Title VII And The
NYSHRL Fail ..................................................................................... 12

            1.    The Conduct Alleged by Plaintiff Does Not Establish A
*Prima Facie* Case of Hostile Work Environment ..................................... 12

            2.    WeWork Is Not Liable for Stiles' Conduct Because It Took
Prompt Remedial Action Following Plaintiff's Complaint ...................... 13

    B.    Plaintiff Also Cannot Establish A Hostile Environment Claim
Under The NYCHRL ........................................................................... 18

II.    PLAINTIFF'S GENDER-BASED DISCRIMINATORY DISCHARGE
CLAIMS SHOULD BE DISMISSED. .................................................... 21

    A.    Applicable Law Under Title VII And The NYSHRL ............................ 21

    B.    Plaintiff's Title VII and NYSHRL Claims Are Without Merit ............... 22

            1.    No Evidence Would Allow A Reasonable Fact Finder To
Conclude That Gender Was A Motivating Factor In
Plaintiff's Termination ....................................................................... 22

            2.    WeWork Discharged Plaintiff For Legitimate Business
Reasons ............................................................................................. 23

# <u>TABLE OF CONTENTS</u>

(continued)

Page

C.     Plaintiff's NYCHRL Claims Are Without Merit Because She Cannot Show That She Was Treated Less Well Or Establish Pretext ................................................................................................ 24

III.   PLAINTIFF'S DISABILITY-BASED DISCRIMINATORY DISCHARGE CLAIMS SHOULD BE DISMISSED. .................................... 25

A.     Plaintiff Was Not Disabled Under The ADA ...................................... 26

B.     Plaintiff Cannot Establish A *Prima Facie* Case of Discrimination ...................... 27

IV.   PLAINTIFF'S GENDER-BASED RETALIATION CLAIMS SHOULD BE DISMISSED. ....................................................................................... 28

A.     Plaintiff Cannot Show That Her Report Of Stiles' Conduct Played Any Role In Her Discharge.................................................................... 29

B.     WeWork Terminated Plaintiff's Employment For Legitimate, Non-Retaliatory Reasons ........................................................................ 30

V.    THE COURT SHOULD DISMISS PLAINTIFF'S DISABILITY-BASED RETALIATION CLAIMS.................................................................... 30

A.     Plaintiff Did Not Engage In Protected Activity And Therefore Cannot Establish A *Prima Facie* Case of Retaliation........................................... 31

B.     There Is No Evidence Of Pretext ........................................................ 32

VI.   PLAINTIFF'S FMLA INTERFERENCE AND RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE WEWORK DID NOT INTERFERE WITH HER ANY LEAVE AND DID NOT DISCHARGE HER BECAUSE SHE TOOK INTERMITTENT LEAVE. ............................... 32

A.     Plaintiff's FMLA Interference Claim Fails Because She Never Gave Notice Of Need To Take FMLA Leave And Because WeWork Did Not Deny Her Any Benefit To Which She Was Entitled.............................................................................................. 33

B.     Plaintiff Cannot Prevail On Her FMLA Retaliation Claim ................................. 35

VII.  PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE WITHOUT MERIT. ....................................................................... 37

CONCLUSION.................................................................................................... 38

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Soloviev v. Goldstein*,
  104 F. Supp. 3d 232 (E.D.N.Y. 2015) ....................................................................28

*Anderson v. Nat'l Grid, PLC*,
  93 F. Supp. 3d 120 (E.D.N.Y. 2015) ......................................................................27

*Arroyo-Horne v. City of New York*,
  831 F. App'x 536 (2d Cir. 2020) ............................................................................33

*Bamba v. Fenton*,
  758 F. App'x 8 (2d Cir. 2018) ................................................................................29

*Bentley v. Autozoners, LLC*,
  935 F.3d 76 (2d Cir. 2019)..............................................................................14, 30

*Bohnet v. Valley Stream Union Free Sch. Dist. 13*,
  30 F. Supp. 3d 174 (E.D.N.Y. 2014) ......................................................................30

*Brizzi v. Utica Mut. Ins. Co.*,
  2021 WL 1163112 (E.D.N.Y. Mar. 26, 2021) ..........................................................32

*Cajamarca v. Regal Entm't Grp.*,
  2013 WL 5717119 (Sup. Ct. N.Y. Cnty. Oct. 17, 2013) ...........................................20

*Caridad v. Metro-North Commuter R.R.*,
  191 F.3d 283 (2d Cir. 1999)...................................................................................15

*Caskey v. Cnty. of Ontario*,
  560 F. App'x 57 (2d Cir. 2014) ..............................................................................31

*Chapman v. H & R Block*,
  30 Misc. 3d 136(A) (1st Dep't Feb. 15, 2011)..........................................................21

*Chertkova v. Connecticut Gen. Life Ins. Co.*,
  92 F.3d 81 (2d Cir. 1996)......................................................................................22

*Chin v. New York City Hous. Auth.*,
  106 A.D.3d 443 (1st Dep't 2013) ...........................................................................19

*Clark Cnty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001)..............................................................................................29

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Clemente v. N.Y. State Div. of Parole*,
  684 F. Supp. 2d 366 (S.D.N.Y. 2010).......................................................28

*Cody v. County of Nassau*,
  577 F. Supp. 2d 623 (E.D.N.Y. 2008), *aff'd*, 345 F. App'x 717 (2d Cir. 2009).....................27

*Coleman v. Prudential Relocation*,
  975 F. Supp. 234 (W.D.N.Y. 1997)..........................................................36

*Corrado v. New York Unified Court Sys.*,
  163 F. Supp. 3d 1 (E.D.N.Y. 2016) .........................................................32

*Cruz v. Coach Stores, Inc.*,
  202 F.3d 560 (2d Cir. 2000).................................................................21

*Cuttler v. Fried, Frank, Harris, Shriver &Jacobson, LLP*,
  2012 WL 1003511 (S.D.N.Y. Mar. 23, 2012) ...........................................23

*Dabney v. Christmas Tree Shops*,
  958 F. Supp. 2d 439 (S.D.N.Y. 2013)......................................................17

*Davis-Bell v. Columbia Uni.*,
  851 F. Supp. 2d 650 (S.D.N.Y. 2012)......................................................12

*Dawson v. Bumble & Bumble*,
  398 F.3d 211 (2d Cir. 2005).................................................................21

*Delaney v. Bank of Am. Corp.*,
  908 F. Supp. 2d 498 (S.D.N.Y. 2012), *aff'd*, 766 F.3d 163 (2d Cir. 2014) ...........................24

*Detouche v. JTR Transp. Corp.*,
  2020 WL 7364116 (S.D.N.Y. Dec. 14, 2020) ...........................................14

*Dillon v. Ned Mgmt., Inc.*,
  85 F. Supp. 3d 639 (E.D.N.Y. 2015) .......................................................37

*Distasio v. Perkin Elmer Corp.*,
  157 F.3d 55 (2d Cir. 1998)..................................................................15

*Dister v. Continental Grp., Inc.*,
  859 F.2d 1108 (2d Cir. 1988)...............................................................24

*El Sayed v. Hilton Hotels Corp.*,
  627 F.3d 931 (2d Cir. 2010)................................................................30

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Ellison v. Chartis Claims, Inc.*,
   53 Misc. 3d 1203(A) (Sup. Ct. Kings Cnty. Sept. 23, 2016), *aff'd*, 178 A.D.3d
   665 (2d Dep't 2019).................................................................................19, 22

*Farmer v. Shake Shack Enters., LLC*,
   473 F. Supp. 3d 309 (S.D.N.Y. 2020)......................................................................37

*Matter of Father Belle Cmty. Ctr. v. New York State Div. of Human Rights*,
   221 A.D.2d 44 (4th Dep't 1996)...............................................................................12

*Finnerty v. William H. Sadlier, Inc.*
   176 F. App'x 158 (2d Cir. 2006) .......................................................................15, 16

*Giallanza v. Time Warner Cable*,
   2009 WL 857502 (W.D.N.Y. Mar. 30, 2009)...........................................................27

*Giordano v. City of New York*,
   274 F.3d 740 (2d Cir. 2001).....................................................................................25

*Gonzalez v. Beth Israel Med. Ctr.*,
   262 F. Supp. 2d 342 (S.D.N.Y. 2003)......................................................................16

*Gordon v. New York City Bd. of Educ.*,
   232 F.3d 111 (2d Cir. 2001).....................................................................................29

*Graziadio v. Culinary Inst. of Am.*,
   817 F.3d 415 (2d Cir. 2016).....................................................................................33

*Hamburg v. New York Univ. Sch. of Med.*,
   155 A.D.3d 66 (1st Dep't 2017) .........................................................................25, 26

*Harricharan v. Air Canada*,
   2017 WL 8186647 (Sup. Ct. Queens Cnty. Nov. 3, 2017)......................................28

*Hayes v. Dahlke*,
   976 F. 3d 259 (2d Cir. 2020)....................................................................................29

*Hernandez v. Kaisman*,
   103 A.D.3d 106 (1st Dep't 2012) .............................................................................19

*Howley v. Town of Stratford*,
   217 F.3d 141 (2d Cir. 2000)......................................................................................17

*Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*,
   862 F. Supp. 2d 311 (S.D.N.Y. 2012)......................................................................35

Firm:52566637

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kotcher v Rosa & Sullivan Appliance Ctr., Inc.*,
957 F.2d 59 (2d Cir. 1992)..................................................................12, 13, 16

*Lievre v. JRM Constr. Mgt., LLC*,
2019 WL 4572777 (S.D.N.Y. Sept. 20, 2019)........................................36

*Lucas v. Apple Food Service of New York, LLC*,
2015 WL 6507495 (E.D.N.Y. Oct. 27, 2015)..........................................28

*Macropoulos v. Metro. Life Ins. Co.*,
2018 WL 1508564 (S.D.N.Y. Mar. 26, 2018) ....................................34, 36

*Mahler v. First Dakota Title LP*,
931 F.3d 799 (8th Cir. 2019) ....................................................18, 33, 35

*Malena v. Victoria's Secret Direct, LLC*,
886 F. Supp. 2d 349 (S.D.N.Y. 2012)..............................................37, 38

*Manko v. Deutsche Bank*,
554 F. Supp. 2d 467 (S.D.N.Y. 2008)....................................................18

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)..............................................................................29

*Melman v. Montefiore Med. Ctr.*,
98 A.D.3d 107 (1st Dep't 2012) ......................................................25, 29

*Mihalik v. Credit Agricole Cheuvreux N. Am.*,
Inc., 715 F.3d 102 (2d Cir. 2013) ...........................................................29

*Mitchell v. Macy's, Inc.*,
2018 WL 9918137 (S.D.N.Y. Sept. 25, 2018)........................................19

*Montana v. First Fed. Sav. & Loan of Rochester*,
869 F.2d 100 (2d. Cir. 1989).................................................................23

*Murray v. N.Y.U. Coll. of Dentistry*,
57 F.3d 243 (2d Cir. 1995).....................................................................14

*Murray v. Visiting Nurse Servs. of N.Y.*,
528 F. Supp. 2d 257 (S.D.N.Y. Oct. 31, 2017)........................................28

*Nassry v. St. Luke's Roosevelt Hosp.*,
2016 WL 1274576 (S.D.N.Y. Mar. 31, 2016) .........................................31

Firm:52566637

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Perry v. Ethan Allen, Inc.*,
115 F.3d 143 (2d Cir. 1997)..................................................................................15

*Petrosino v. Bell Atl.*,
385 F.3d 210 (2d Cir. 2004)..................................................................................14

*Potenza v. City of New York*,
365 F.3d 165 (2d Cir. 2004)..................................................................................35

*Prisco v. Air Indus. Grp.*,
2017 WL 9485663 (E.D.N.Y. Sept. 1, 2017), *Report and Recommendation
Adopted by*, 2017 WL 4417665 (E.D.N.Y. Sept. 30, 2017) ..................................31

*Quinn v. Green Tree Credit Corp.*,
159 F.3d 759 (2d Cir. 1998)............................................................................14, 17

*Rivera v. United Parcel Serv., Inc.*,
2015 WL 13345524 (Sup. Ct. Bronx Cnty. Dec. 24, 2015) ..................................20

*Rojas v. Roman Catholic Diocese of Rochester*,
660 F.3d 98 (2d Cir. 2011)....................................................................................14

*Sardina v. United Parcel Serv., Inc.*,
254 F. App'x 108 (2d Cir. 2007) ...........................................................................18

*Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*,
183 F.3d 155 (2d Cir. 1999)..................................................................................35

*Sassaman v. Gamache*,
566 F.3d 307 (2d Cir. 2009)..................................................................................24

*Schiavone v. N.Y. State Office of Rent Admin.*,
2018 WL 5777029 (S.D.N.Y. Nov. 2, 2018) .........................................................31

*Serdans v. New York & Presbyterian Hosp*,
112 A.D.3d 449 (1st Dep't 2013) ..........................................................................31

*Sotomayor v. City of New York*,
862 F. Supp. 2d 226 (S.D.N.Y. 2012)....................................................................32

*Sowemimo v. D.A.O.R. Sec., Inc.*,
43 F. Supp. 2d 477 (S.D.N.Y. 1999)......................................................................37

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993)...............................................................................................21

Firm:52566637

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Stuart v. T-Mobile USA, Inc.*,
 2015 WL 4760184 (S.D.N.Y. Aug. 12, 2015).........................................................35

*Summa v. Hofstra Univ.*,
 708 F.3d 115 (2d Cir. 2013).................................................................................16

*Suri v Grey Global Grp., Inc.*,
 164 A.D.3d 108 (1st Dep't 2018) ...................................................................18, 22

*Tomka v. Seiler Corp.*,
 66 F.3d 1295 (2d Cir. 1995)............................................................................37, 38

*Toos v. Leggiadro Int'l, Inc.*,
 2016 WL 8193183 (Sup. Ct. N.Y. Cnty. Jan. 5, 2016)........................................30

*Torres v. City of New York*,
 2019 WL 1765223 (S.D.N.Y. Apr. 22, 2019).......................................................20

*Van Zant v. KLM Royal Dutch Airlines*,
 80 F.3d 708 (2d Cir. 1996)....................................................................................16

*Vance v. Ball State Univ.*,
 570 U.S. 421 (2013)...............................................................................................14

*Varughese v. Mount Sinai Med. Ctr.*,
 2015 U.S. Dist. LEXIS 43758 (S.D.N.Y. Mar. 27, 2015),
 *aff'd*, 2017 U.S. App. LEXIS 12123 (2d Cir. 2017)..............................................26

*Vinokur v. Sovereign Bank*,
 701 F. Supp. 2d 276 (E.D.N.Y. 2010) ..................................................................30

*Wahlstrom v. Metro-North Commuter R. Co.*,
 89 F. Supp. 2d 506 (S.D.N.Y. 2000)...............................................................15, 16

*Wallen v. Teknavo Grp.*,
 2019 WL 1435879 (E.D.N.Y. Mar. 30, 2019).......................................................24

*Weinstock v. Columbia Univ.*,
 224 F.3d 33 (2d Cir. 2000)....................................................................................21

*Weixel v. Bd. of Educ. of City of New York*,
 287 F.3d 138 (2d Cir. 2002)..................................................................................26

*Whidbee v. Garzarelli Food Specialties, Inc.*,
 223 F.3d 62 (2d Cir. 2000)....................................................................................17

Firm:52566637

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Williams v New York City Hous. Auth.*,
   61 A.D.3d 62 (1st Dep't 2009) ....................................................................................18, 25

*Woods v. START Treatment & Recovery Ctrs., Inc.*,
   864 F.3d 158 (2d Cir. 2017) ..........................................................................................33

*Ya-Chen Chen v. City Univ. of N.Y.*,
   805 F.3d 59 (2d Cir. 2015) ........................................................................................25, 26

**Statutes and Other Autorities**

29 C.F.R. § 1630.2(i) ......................................................................................................26

29 U.S.C. § 2615(a)(1) ....................................................................................................33

29 U.S.C. § 2611(2)(a) ....................................................................................................33

42 U.S.C. § 12102(2) ......................................................................................................26

Americans with Disabilities Act .......................................................................... *passim*

Family and Medical Leave Act ............................................................................ *passim*

N.Y. Admin. Code § 8-107(13)(b) ...................................................................................20

New York City Human Rights Law ...................................................................... *passim*

New York State Human Rights Law ..................................................................... *passim*

Title VII of the Civil Rights Act .......................................................................... *passim*

Firm:52566637

## PRELIMINARY STATEMENT

A year before plaintiff Alexandria Fitzgerald was one of ultimately thousands of employees laid off in defendant We Work Management LLC's ("WeWork") highly publicized restructuring, she reported that a male co-worker had made her feel uncomfortable on a business trip. WeWork promptly investigated – and disciplined – the co-worker, who admitted key aspects of what she had reported. Following that discipline, the co-worker did not act inappropriately toward Fitzgerald. In fact, Fitzgerald voluntarily sought his assistance with several matters over the next year, addressed him as "friend," and praised him to their department leaders. Meanwhile, over that same period, WeWork suffered major changes to its business following an abandoned IPO when investors raised concerns about the Company's path to profitability. As a result, the Company brought in a new senior leadership team, changed its strategic priorities, and engaged in massive layoffs.

Ignoring this reality, Fitzgerald filed a panoply of claims, alleging that WeWork (1) subjected her to a hostile work environment because of her gender and a disability (generalized anxiety), (2) discharged her for the same reasons, and (3) retaliated against her, in violation of Title VII of the Civil Rights Act ("Title VII"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). She also alleges that WeWork interfered with her right to take leave under the Family and Medical Leave Act ("FMLA") and terminated her employment in retaliation for seeking to exercise her FMLA rights. Finally, she claims that defendants Danny Duong and David Stiles (the co-worker whom she claimed had made her uncomfortable) aided and abetted discrimination in violation of the NYSHRL and the NYCHRL (in addition to having direct

liability). With discovery affirming no basis for any of these claims, they are ripe for summary judgment.

## STATEMENT OF FACTS

### A.    WeWork Hired Plaintiff for a Program Management Organization Position

WeWork is a leading provider of office space and workplace solutions for companies around the world. (SOF ¶ 1; Kondili Decl. ¶ 2).[1] Fitzgerald commenced employment with WeWork on March 25, 2019, at its headquarters in New York City, as a "PxWe Senior Lead - Program Manager" (also referred to as "Senior Lead Program Management") in the Program Management Organization ("PMO"). (SOF ¶ 2; Fitzgerald Dep. 32:22 to 33:11, 41:8-22, 46:5-18, 140:10-16; Garland Decl. Ex. 2).[2] Fitzgerald initially reported to Nicole Rodriguez, Senior Manager, Program Management. (SOF ¶ 3; Fitzgerald Dep. 38:24 to 39:3, 42:16-24, 43:4-13, 44:16-19; Garland Decl. Ex. 4). Rodriguez, in turn, reported to Akash Agarwal, Regional Head. (Garland Decl. Ex. 10).

### B.    Fitzgerald's Internal Complaint About Stiles And WeWork's Response

Early during Fitzgerald's employment, she received an assignment to travel to Kansas City, Missouri on May 10-11, 2019, to check on issues at a project site for a client. (SOF ¶ 72; Fitzgerald Dep. 137:6-13, 138:5-12, 140:3-5). Agarwal asked her peer Stiles to also go on the trip because

---

[1] WeWork was improperly identified in the caption as The We Company d/b/a WeWork. References to Defendants' Rule 56.1 Statement of Material Facts are designated "(SOF ¶ __)." References to the accompanying Declaration of Ivan Kondili are designated as "(Kondili Decl. ¶ __)." References to exhibits attached to the Kondili Declaration are designated as "(Kondili Decl. Ex. __)." References to the transcript of Kondili's March 30, 2021 deposition, excerpts of which are attached as Exhibit 1 to the accompanying Declaration of David W. Garland, are designated as "(Kondili Dep. [page:line])."

[2] References to the transcript of Fitzgerald's March 12, 2021 deposition, excerpts of which are attached as Exhibit 3 to the accompanying Garland Declaration, are designated as "(Fitzgerald Dep. [page:line])." References to exhibits attached to the Garland Declaration are designated as "(Garland Decl. Ex. __)."

Fitzgerald "was so new to the company" and "had not ever been on a WeWork construction site," while Stiles had experience in "facilities-related issues" that she lacked.  (SOF ¶ 73; Fitzgerald Dep. 138:18 to 139:2, 171:13-20; Agarwal Dep. 94:3-14).  Fitzgerald and Stiles both occupied the same Level 4 Senior Lead job profile, and Fitzgerald's base salary was $110,000, while Stiles' base salary was $95,000. (SOF ¶ 75; Fitzgerald Dep. 33:12-21; Agarwal Dep. 75:19-23, 82:3-13; Stiles Decl. Ex. 1).[3]  Stiles reported to Agarwal, and after reporting to Rodriguez, Fitzgerald also reported to Agarwal.  (SOF ¶ 3; Fitzgerald Dep. 38:24 to 39:3, 42:16-24, 43:4-13, 44:16-19; Garland Decl. Ex. 10).

        **1.**      **Plaintiff Reports an Uncomfortable Experience with Stiles**

Upon Fitzgerald's return from the trip, she told Rodriguez on May 13, 2019, that she "had a really uncomfortable topic to bring up to her" and that she "needed [it] to stay as confidential as possible."  (SOF ¶ 77; Fitzgerald Dep. 140:17-22).  Rodriguez reported to Agarwal that Fitzgerald had told her that Stiles had "behaved in an inappropriate manner" toward her on the trip.  (SOF ¶ 80; Agarwal Dep. 87:12-20).  Agarwal immediately notified WeWork's People department of Fitzgerald's report.  (SOF ¶ 83; Agarwal Dep. 90:11-15, 91:2-16).

On May 14, 2019 – just one day after Fitzgerald first reported her concerns to Rodriguez – Maria Cox, People Partner, sent Fitzgerald an e-mail "to let [her] know that [her] concerns regarding [Stiles]" had been "sent over to [her]."  (SOF ¶ 90; Fitzgerald Dep. 145:20 to 146:2; Garland Decl. Ex. 12, p. WEWORK001967).  Fitzgerald responded to Cox's e-mail, expressing her appreciation for Cox's "sense of urgency and professionalism towards this extremely sensitive

---

[3] References to the accompanying Declaration of David Stiles are designated as "(Stiles Decl. ¶ __)."  References to exhibits attached to the Stiles Declaration are designated as "(Stiles Decl. Ex. __)."

matter," as well as for how Rodriguez had "handled this [matter] with the utmost professionalism." (SOF ¶ 93; Fitzgerald Dep. 147:24 to 148:5; Garland Decl. Ex. 12, p. WEWORK001968).

### 2.    WeWork's People Department Promptly Investigates

Cox spoke with Fitzgerald via a video call on May 15, 2019.  (SOF ¶ 96; Fitzgerald Dep. 150:13-15; Cox Decl. ¶ 3 & Ex. 1).[4]  According to Cox's contemporaneous notes of the call, Fitzgerald told Cox that during a dinner on their trip to Kansas City, Stiles asked her, "Do you have a boyfriend," and that when she told him that she "wanted to settle down," he advised her that she should "bang a few out before you get into a relationship."  (SOF ¶ 98; Cox Decl. Ex. 2). When Fitzgerald brought up a colleague with whom she had struggled to build a relationship, Stiles responded, "I think she has a crush on me, but we get along great."  (*Id.*).  Fitzgerald also shared with Cox that when they had been at dinner, Stiles wiped BBQ sauce off her face with a napkin. (*Id.*).

Following dinner, Stiles returned to his hotel room while she went for a walk and a drink. (*Id.*).  While out, *Fitzgerald initiated a text conversation with Stiles inviting him to meet her*; during that exchange, Stiles texted to her, "lol, want to cuddle 😊"; Fitzgerald did not respond, and he subsequently texted, "I still didn't get an answer on the cuddling👅." (*Id.*).[5]  Later, Fitzgerald

---

[4] References to the accompanying Declaration of Maria Cox are designated as "(Cox Decl. ¶ _)." References to exhibits attached to the Cox Declaration are designated as "(Cox Decl. Ex._)." References to the transcript of Cox's March 23, 2021 deposition, excerpts of which are attached as Exhibit 13 to the Garland Declaration, are designated as "(Cox Dep. [page:line])."

[5] The complete text exchange is found at Exhibit 16 of the Garland Declaration, pp. DS00003-12; the exchange started at 7:29 pm when Fitzgerald texted Stiles "If you get any energy come meet me!! This plaza is pretty sweet!" -- *a text that Fitzgerald did not forward to Cox*.  Stiles responded, "I already got my sweat pants on boo."  Fitzgerald then proceeded to send Stiles photos from her walk, including drinks she had ordered.  When Stiles asked, "how drunk are you tryn [sic] to get," Fitzgerald responded, "Not at all[.]  Going to sleep like a baby[.]"  In response to that text, Stiles wrote, "Lol want to cuddle 😊."  They then continued to text to each other, including a photo that Fitzgerald sent of herself and a dog to him.  In response to the photo, Stiles wrote, "Dawwww lol[.] I still did not get an answer on that cuddling👅."  *Id.*

Firm:52566637

replied to Stiles, "Phone died while I was out.  No cuddling for me, Have a good night $z^z$." (*Id.*). Fitzgerald and Stiles went to breakfast together the following morning and Stiles did not acknowledge her reply to his text.  (*Id.*).[6]

Alissa Horn, Director, Investigations & Employee Relations, thereafter took over the investigation because, per WeWork's Employee Relations investigation practices, her team investigated complaints alleging harassment following intake by the People Partners like Cox. (SOF ¶ 108; Horn. Decl. ¶ 6).  Horn spoke with Cox about what Fitzgerald had told her and she reviewed Cox's notes of her conversation with Fitzgerald and the text messages that Fitzgerald had forwarded to Cox.  (SOF ¶ 109; Horn Dep. 87:6 to 88:19, 113:25 to 114:10).

Horn interviewed Stiles on May 17, 2019.  (SOF ¶ 110; Horn Decl. ¶ 7).  Horn questioned Stiles about what he said to Fitzgerald at dinner; he admitted that in the context of a discussion about relationships, he advised her to "bang a few out" before she settled down.  (SOF ¶ 112: Horn Decl. Ex. 3).  Stiles further admitted that (1) he said that a co-worker had "a crush on him"; (2) he used a napkin to wipe BBQ sauce off her face; and (3) he asked Fitzgerald if she "wanted to cuddle" (but told Horn that he meant no offence and if Fitzgerald had said "yes," then he would have told her that "he was just kidding").  (*Id.*).

Following her interview of Stiles, Horn reached out to Fitzgerald and they spoke on May 17, 2019.  (SOF ¶ 118; Horn Dep. 93:2-9; Fitzgerald Dep. 176:8-13, 177:1-2; Garland Decl. Ex. 14; Horn Decl. ¶ 9).  Fitzgerald told Horn that she had just been "on a call" with Stiles and others and "she had very appropriate and professional interactions with [him]; she asked a question and he answered it," and that Stiles was "not a bad guy but there's a line and he crossed it" on the trip.

---

[6] The complete text exchange between Fitzgerald and Stiles that lead to their going to breakfast is also found at Exhibit 16 of the Garland Decl., pp. DS00012-15.

(SOF ¶ 123; Horn Decl. Ex. 4; Fitzgerald Dep. 180:9-11).  During this period, Fitzgerald and Stiles interacted without incident.  (Stiles Decl. Exs. 3-5).

In her May 20, 2019 Investigative Report, Horn set forth her findings: "I find on Friday, May 10, 2019, [Stiles] made multiple comments to Alexandria Fitzgerald that were inappropriate and made her uncomfortable….  He further admitted to touching [Fitzgerald's] face to remove barbeque sauce during dinner."  (SOF ¶ 126; Horn Decl. ¶ 11 & Ex. 5).  Horn wrote that Stiles' conduct was "inappropriate, unprofessional and in violation of the Company's Workplace Violence & Harassment policy," and she recommended that Stiles "receive a final written warning regarding his violation of the Company's Workplace Violence and Harassment policy."  (*Id.*).  Horn presented her recommendation to Agarwal, and he was "aligned the recommendation and proceeding with the [F]inal [W]ritten [W]arning."  (SOF ¶ 128; Horn Dep. 101:18 to 102:2, 112:21 to 113:8).

### 3.    WeWork Disciplines Stiles

On May 22, 2019, consistent with Horn's recommendation, Cox and Agarwal delivered the Final Written Warning (the "Final Warning") to Stiles.  (SOF ¶ 129; Cox Decl. ¶ 6; Agarwal Dep. 97:24 to 98:5, 99:11-16).  The Final Warning stated that Stiles' behavior during the Kansas City trip with Fitzgerald constituted a "violation of the Company's Workplace Violence & Harassment policy."  (SOF ¶ 130; Cox Decl. Ex. 4).  It further stated that "[a]s a condition of continued employment, [Stiles] must fully comply with all applicable WeWork policies, including [the] Workplace Violence & Harassment [policy] and any other company directive regarding harassment and acceptable workplace conduct."  (*Id.*).  Additionally, the Final Warning stated that "[a]ny violation of an applicable policy or company directive related to this final warning or failure to timely complete any of the actions listed above will result in your immediate separation from WeWork." (*Id.*).

Firm:52566637

On May 23, 2019, Horn reached out to Fitzgerald and told her that "the investigation into her complaint has been completed and appropriate action was taken to address [her] concern." (SOF ¶ 133; Horn Decl. ¶ 12 & Ex. 6; Horn Dep. 112:3-11).  Following the issuance of the Final Warning, Stiles did not engage in any inappropriate behavior toward Fitzgerald.  (SOF ¶ 149; Fitzgerald Dep. 186:8-18).  During the summer of 2019, Fitzgerald initiated several interactions with Stiles – and addressed him as "friend" and praised him to management.  (SOF ¶¶ 140-48; Stiles Decl. Exs. 6 & 7; Fitzgerald Dep. 122:18 to 123:12, 123:24 to 125:5, 130:24 to 131:9, 131:23 to 132:9, 132:12-14, 133:14 to 134:13, 135:13-19, 135:23 to 136:12; Garland Decl. Exs. 15-17).

### C.    Between The Summer Of 2019 And The Fall Of 2020, WeWork Reorganized And Suffered Significant Layoffs

In the summer of 2019, WeWork combined the PMO group with the Client Solutions ("CS") group to form a new Enterprise Services ("ES") department.  (SOF ¶ 6; Fitzgerald Dep. 45:7-18, 102:14-22, 221:17-21; Agarwal Dep. 161:18 to 162:3, 165:15-23).  PMO and CS had previously focused in different areas, and they hired employees with appropriate skills for those respective areas.  (SOF ¶ 7; Kondili Decl. ¶ 5; Agarwal Dep. 164:9-13).  PMO, for which Fitzgerald had been hired, focused on post-contracting ("post-deal") project execution for enterprise clients "to ensure exceptional delivery of the WeWork product."  (SOF ¶ 8; Agarwal Dep. 158:3-15).  CS, in contrast, focused on the sales phase of a project, including technical pre-sales, to ensure contract signing ("pre-deal").  (SOF ¶ 9; Agarwal Dep. 162:4-11).

In merging these two groups and their respective areas of focus, WeWork hoped to create one department providing enterprise clients with an "end-to-end" experience, meaning from the pre-sale design process of a custom space, through construction and eventual delivery of that space.  (SOF ¶ 12; Kondili Decl. ¶ 6).  In order to right-size the newly combined organization for

the existing deals and others in the sales pipeline, WeWork laid off several employees in the summer of 2019; Fitzgerald was not one of them.  (SOF ¶ 13; Kondili Decl. ¶ 7).

Following the merger, Fitzgerald reported to Catie Delay, Senior Associate Project Executive, during the summer of 2019, in the U.S. East region.  (SOF ¶18; Fitzgerald Dep. 44:4-9, 44:24 to 45:3, 45:7-18, 49:4-7; Garland Decl. Ex. 7).  Delay, in turn, reported to Danny Duong, Senior Project Executive, and Duong reported to Akash Agarwal, Regional Head. (SOF ¶ 19; Fitzgerald Dep. 48:17-19; Duong Dep. 20:22-25, 46:4-13; Garland Decl. Ex. 7).

In November 2019, following its abandoning a proposed IPO and changes in senior leadership, WeWork and its affiliated entities conducted a reduction-in-force ("RIF") that led to the elimination of approximately 2,400 positions, or roughly 20% of their collective workforce. (SOF ¶ 21; Kondili Decl. ¶ 11; Fitzgerald Dep. 87:10 to 88:3; Kondili Dep. 36:19 to 37:2).  In the ES department, in which Fitzgerald worked, 27 employees were laid off in November 2019.  (SOF ¶23; Kondili Decl. ¶ 12).  In Fitzgerald's U.S. East region of the ES Department, Bethany Lewis, Associate Project Executive, who had a similar role to Fitzgerald, was let go in the November 2019 layoffs.  (SOF ¶ 24; Kondili Decl. ¶ 13; Fitzgerald Dep. 84:24 to 85:17; Agarwal Dep. 182:14-21).

In December 2019, Delay moved to a different role within the Company, but Fitzgerald remained in the same position and began reporting directly to Duong; Duong remained her supervisor for the duration of her employment.  (SOF ¶ 26; Fitzgerald Dep. 51:1-8, 53:13-17; Duong Dep. 46:19-23; Garland Decl.  Ex. 8).  Stiles, both then and for the duration of Fitzgerald's employment, was in a different "pod" within the department and reported to a different supervisor than Fitzgerald.  (SOF ¶ 27; Fitzgerald Dep. 51:23 to 52:5; Garland Decl. Ex. 8).

As company-wide changes continued in early 2020, the ES department ceased reporting into WeWork's Sales organization and began reporting into its Product organization, which

focused more on design and construction.  (SOF ¶ 29; Kondili Dep. 91:13-18; Kondili Decl. ¶ 14).

At around the same time, Ivan Kondili, Co-Head of ES, received direction from Anthony Milliote, Head of Delivery and Kondili's manager, to start planning for additional layoffs throughout 2020. (SOF ¶ 30; Kondili Dep. 89:10 to 90:10).  With the change in organizational reporting, technical expertise became more important for the future of the group; Kondili "needed to make sure that we have people that construction know-how, methodology, for the future of the organization in later 2020."  (SOF ¶ 31; Kondili Dep. 91:21 to 92:6).  This mandate became even more pressing in March 2020 and beyond as COVID-19 shattered the economy and, more specifically, as "the volume that [Kondili's] team was responsible for was lessening."  (SOF ¶ 32; Kondili Dep. 90:11 to 91:2).

In planning for the additional layoffs, Kondili needed to be "forward looking" in terms what would be expected in the period ahead – and therefore he sought to retain employees who in his view had deeper, hands-on experience in budgeting, contracting, and construction.  (SOF ¶ 33; Kondili Decl. ¶ 16).  This "forward looking" planning would help ensure that those who remained in the ES department were equipped, with fewer resources than before, to handle the "end-to-end" client experience.  (SOF ¶ 34; Kondili Decl. ¶ 17).  With this focus, the layoff selections were not to be based upon "a performance assessment."  (SOF ¶ 37; Kondili Dep. 68:24 to 69:2).  Kondili directed his global direct reports – responsible for U.S. East (Agarwal); U.S. West; Europe, Middle East & Africa; Latin America; and Pacific – "to recommend how many employees they can afford to lose without compromising our day-to-day operations and obligation to our clients."  (SOF ¶38; Kondili Dep. 93:2 to 94:5).

Having received the directive from Kondili, Agarwal reviewed those in his reporting line and developed recommendations "[b]ased on the business and strategic direction of the new, leaner

organization," as well as "the goals, roles and responsibilities of the new group" and the "experience and skillsets of individuals." (SOF ¶ 42; Agarwal Dep. 62:6-15). Agarwal provided Kondili with a recommendation of seven employees to consider for the April 2020 RIF, and listed them from least to most likely to be successful in the leaner organization given their experience and skillsets. (SOF ¶ 43; Kondili Dep. 94:24 to 95:17; Garland Decl. Ex. 9; Agarwal Dep. 103:12-16, 104:2-11, 106:22 to 107:13, 108:10 to 109:7, 168:19-25, 172:13 to 173:5). Agarwal placed Fitzgerald, who had previously been in PMO, second on the list (*i.e.*, second least likely to succeed) because he believed that she also lacked necessary skills to manage the customer during the life cycle of a project. (SOF ¶ 45; Agarwal Dep. 112:22 to 113:8). Before providing his recommendations to Kondili, Agarwal reviewed Fitzgerald's resume. (SOF ¶ 52; Agarwal Dep. 66:7-18, 113:12-14, 159:20 to 160:9, 183:14-21). Fitzgerald's resume did not identify the type of experience that Agarwal believed would be necessary in the organization going forward, as did not show experience in the pre-deal phase of technical pre-sales, design or architecture. (SOF ¶ 53; Agarwal Decl. ¶ 6 & Ex. 1).

When Agarwal spoke with Kondili about his recommendations, he told Kondili that in his view, Fitzgerald "lacked the technical skills on the construction side" that would be necessary going forward in the leaner organization. (SOF ¶ 54; Kondili Dep. 68:7-11). Kondili reviewed Agarwal's recommendations with him (as well as the recommendations of his other direct reports), and decided who would be included in the RIF in the ES department. (SOF ¶ 55; Kondili Dep. 94:7-11, 113:10-17). Based on Agarwal's input and Kondili's own experience with and knowledge of the seven employees on the list provided by Agarwal, Kondili selected five employees who would be separated in this April 2020 RIF: all three remaining U.S.-based Associate Project Executives – Nikki Shahriyari, Fitzgerald, and Christina Wendelin (all of whom

had been part of the PMO and had been identified on Agarwal's list as the three least likely to succeed and most lacking in the skills required in the leaner organization); one Proposal Manager – Kim Koo (the fifth ranked name on Agarwal's list)[7]; and one Project Executive – Pierce Reynoldson (the sixth ranked name on Agarwal's list, who also reported to Duong).  (SOF ¶ 56; Kondili Decl. ¶ 20; Agarwal Dep. 130:11-19).  As a result of Shahriyari's, Fitzgerald's, and Wendelin's inclusion in the April 30, 2020 RIF, WeWork eliminated all remaining Associate Project Executives in the U.S. East or West regions of the ES department.  (SOF ¶ 58; Kondili Decl. ¶ 21; Kondili Decl. Ex. A).

At the time of his decision selecting the individuals for the April 2020 RIF, Kondili had no knowledge that Fitzgerald had complained about Stiles' behavior toward her almost a year earlier in May 2019.  (SOF ¶ 63; Kondili Dep. 86:2-8).  Further, neither Duong nor Stiles had any role in deciding which employees would be separated as part of the April 2020 RIF (or any other of WeWork's several RIFs), let alone advance knowledge of the RIF's timing or the selected employees.  (SOF ¶ 62; Duong Dep. 41:3-6, 56:5-8; Stiles Decl. ¶ 10).  On April 30, 2020, WeWork notified a total of approximately 300 employees, including Fitzgerald and ten others in the ES department, that their employment was ending in the RIF.  (SOF ¶ 65; Kondili Decl. ¶ 22).

Consistent with the mandate he had received, WeWork continued to make cuts in the ES department following the April 2020 RIF.  (SOF ¶ 68; Kondili Decl. ¶ 23).  In a June 2020 RIF, WeWork terminated the employment of Morgen Schroeder (a Project Executive who, like Fitzgerald, had reported to Duong), among others.  (SOF ¶ 69; Kondili Decl. ¶ 24; Agarwal Dep.

---

[7] Similar to his decision to eliminate all three remaining U.S.-based Associate Project Executives positions, Kondili decided that the position of Proposal Manager was no longer needed in the ES department altogether.  Koo was the only remaining Proposal Manager.  (SOF ¶ 60; Kondili Dep. 104:8 to 105:7, 106:11-19.)

Firm:52566637

181:21 to 182:10).  In an October 2020 RIF, WeWork terminated the employment of Agarwal (Regional Head, U.S. East), Rodriguez (Global Ops and Fitzgerald's former supervisor), Jacob Reidel (Stiles' former manager), and Samantha Urioste (Regional Ops), among others.  (SOF ¶ 70; Kondili Decl. ¶ 25).

## ARGUMENT

### I.   PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS BASED ON SEX SHOULD BE DISMISSED.

#### A.   Plaintiff's Hostile Environment Claims Under Title VII And The NYSHRL Fail

##### 1.   The Conduct Alleged by Plaintiff Does Not Establish A *Prima Facie* Case of Hostile Work Environment

To avert summary judgment motion on a hostile work environment claim under Title VII and the NYSHRL, a plaintiff must come forward with "evidence showing that her 'workplace was permeated with discriminatory intimidation, ridicule, and insult' which was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'"  *Davis-Bell v. Columbia Uni.*, 851 F. Supp. 2d 650, 670 (S.D.N.Y. 2012) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 (2004)) (adopting the Title VII standard for NYSHRL cases).  "Generally, isolated remarks or occasional episodes of harassment will not support a finding of a hostile or abusive work environment."  *Matter of Father Belle Cmty. Ctr. v. New York State Div. of Human Rights*, 221 A.D.2d 44, 51 (4th Dep't 1996).  To be actionable, the incidents of harassment "must be repeated and continuous; isolated acts or occasional episodes will not merit relief."  *Kotcher v Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992).

Here, the conduct about which Fitzgerald complains occurred over the span of *a few hours*. During a business dinner on a trip to see a client on May 10, 2019, Stiles asked Fitzgerald, "Do

you have a boyfriend," and when she told him that she "wanted to settle down," he responded that she should "bang a few out before you get into a relationship."  (SOF ¶ 97; Cox Decl. ¶ 4; Cox Dep. 51:17-20).  When Fitzgerald asked Stiles how he got along with a female co-worker, he responded "Oh, easy.  Like, she has [a] crush on me, so I get whatever I want from her.  We have a great working relationship."  (SOF ¶ 99; Cox Decl. Ex. 2).  At one point during dinner, Stiles wiped BBQ sauce of Fitzgerald's face with a napkin.  (SOF ¶ 104; Cox Decl. Ex. 2).

Following dinner, Stiles returned to his hotel room while Fitzgerald went for a walk and a drink.  (SOF ¶ 100; Cox Decl. Ex. 2).  Then after the dinner comments that she reported as troubling, *Fitzgerald initiated a text conversation with Stiles inviting him to join her*; during that exchange, Stiles texted, "lol, want to cuddle 😳", which he subsequently explained was a joke (one he also had made to a male co-worker).  *Id.*  Fitzgerald responded with 😂 – the "burst out laughing" emoji – and continued texting with Stiles.  *Id.*  Later, Stiles texted, "I still didn't get an answer on that cuddling👅," and Fitzgerald later answered, "Phone died while I was out.  No cuddling for me, Have a good night."  *Id.*  The next morning, they went to breakfast and neither mentioned his two "cuddling" texts or her reply.  (SOF ¶ 103; Cox Decl. Ex. 2).  Thereafter, Stiles did not engage in any similar behavior toward Fitzgerald in her remaining eleven months of active employment. (SOF ¶ 149; Fitzgerald Dep. 186:8-18).[8]

### 2.   WeWork Is Not Liable for Stiles' Conduct Because It Took Prompt Remedial Action Following Plaintiff's Complaint

#### (a)   Applicable Law

Under Title VII and the NYSHRL, an employee is a supervisor "only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment

---

[8] *See* pp. 17-18, *infra*.

with significantly different responsibilities, or a decision causing a significant change in benefits.'"

*Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Detouche v. JTR Transp. Corp.*, 2020 WL 7364116, at *16 (S.D.N.Y. Dec. 14, 2020) (stating that the *Vance* standard applies to Title VII and NYSHRL claims).  At the time of their trip to Kansas City, Stiles was in *the same Level 4 Senior Lead job profile* as Fitzgerald – and had *a salary $15,000 lower* than she did.  Moreover, since Stiles had no power to effect a change in Fitzgerald's employment status, he cannot be considered Fitzgerald's supervisor as a matter of law.  *See Bentley v. Autozoners, LLC*, 935 F.3d 76, 91-92 (2d Cir. 2019) (alleged harasser was not a supervisor because he "could not hire, fire, promote, or demote employees" or "set employees' compensation or even their work hours").

When a 'co-employee' — as distinct from a supervisor — is alleged to have engaged in harassing activity, under Title VII, liability cannot be imputed to the employer "unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it.'"  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767 (2d Cir. 1998); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004) (where harassment is perpetrated by non-supervisory coworkers, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action"); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) (same).  To take appropriate remedial action, the response must be "sufficiently calculated to end the harassment."  *Murray v. N.Y.U. Coll. of Dentistry*, 57 F.3d 243, 250 (2d Cir. 1995).  This reasonableness is "assessed from the totality of circumstances," based upon considerations of "the gravity of the harm being inflicted upon the plaintiff, the nature of the

employer's response in light of the employer's resources, and the nature of the work environment." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998).

Courts also consider (1) the amount of time that elapsed between the notice and remedial action (2) whether the response taken comported with the employer's policies, and (3) whether the co-employees complained of were confronted and reprimanded. *See Finnerty v. William H. Sadlier,* Inc., 176 F. App'x 158, 162-63 (2d Cir. 2006); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir. 1997). Ultimately, the key to this analysis is showing that the employer "exercised reasonable care in preventing and correcting [the] . . . harassing behavior." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 295 (2d Cir. 1999). "[E]ven a mere written warning can be an appropriate response if it conveys the message that further harassment will not be tolerated." *Wahlstrom v. Metro-North Commuter R. Co.*, 89 F. Supp. 2d 506, 526 (S.D.N.Y. 2000).

### (b)   WeWork Took Prompt Remedial Action Reasonably Calculated To End Any Harassment

Once WeWork learned of Stiles' alleged conduct, it immediately investigated and took prompt corrective action by disciplining Stiles. On May 13, 2019, Fitzgerald reported to Rodriguez what had occurred on the trip to Kansas City. (SOF ¶ 78; Fitzgerald Dep. 140:23 to 141:11). Argarwal reported it to the People Department on the same day, and on May 14, Cox reached out to Fitzgerald. (SOF ¶¶ 85 & 90; Horn Decl. Ex. 1; Fitzgerald Dep. 145:20 to 146:2; Garland Decl. Ex. 12, p. WEWORK001967). On May 15, Cox interviewed Fitzgerald and collected the text messages with Stiles, and on May 17, Horn interviewed Stiles. (SOF ¶¶ 96, 106 & 110; Garland Decl. Ex. 12, pp. WEWORK001967 & 001971-81; Fitzgerald Dep. 165:10-25, 167:4-12; Horn Decl. ¶ 7). By May 22 – just the seventh business day after Fitzgerald's report – WeWork concluded that Stiles had violated its policy and issued him a Final Warning, placing him

on notice that any further violation "will result in [his] immediate separation" from the Company. (SOF ¶¶ 129-32; Cox Decl. ¶ 6 & Ex. 4; Agarwal Dep. 97:24 to 98:5, 99:11-16).

Courts in the Second Circuit have found similarly prompt responses to be reasonable.  *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996) (affirming summary judgment for the employer where it conducted an investigation within 36 hours and issued a reprimand to the alleged co-worker/harasser within four days); *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (affirming summary judgment for the employer where it "dealt … quickly" with the plaintiff's complaints); *Finnerty,* 176 F. App'x at 162 (affirming summary judgment for the employer where it disciplined the alleged harasser within one week of the employee's complaint); Gon*zalez v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 355 (S.D.N.Y. 2003) (granting summary judgment for the employer where it took prompt remedial action within eleven days of the employee's complaint).

As the Second Circuit recognized in *Van Zant*, 80 F.3d at 715, a warning which expressly threatens termination of employment for a further infraction of the policy against harassment is reasonably calculated to end harassment. *See also Wahlstrom*, 89 F. Supp. 2d at 526 ("'even a mere written warning can be an appropriate response if it conveys the message that further harassment will not be tolerated").[9]  The reasonableness of the response is further evidenced by the fact that the warning was effective as no credible evidence exists that Stiles engaged in such conduct toward her again – and Fitzgerald even praised Stiles to management for his support of her. *See Gonzalez*, 262 F. Supp. 2d at 355 (the fact that the alleged harasser had not "engaged in

---

[9] *See also Gonzalez*, 262 F. Supp. 2d at 355 ("'even a mere written warning can be an appropriate response if it conveys the message that further harassment will not be tolerated'"(*quoting Wahlstrom*, 89 F. Supp. 2d at 526)); *Kotcher*, 957 F.2d at 63 ("written warning [to a supervisor] was sufficient to make [a harasser] aware that the harassment would not be tolerated on [the employer's] premises").

Firm:52566637

any further misconduct towards [the plaintiff] or any other . . . employee" was evidence that the employer's response was reasonable).  Although Fitzgerald contends that Stiles subsequently touched a female employee's breasts; referred to another female employee as a "stripper"; and asked a female client about her relationship status (Fitzgerald Dep. 186:8 to 187:9, 191:1-2; 194:3-14, 196:24 to 197:12)), her testimony fails to establish that Stiles engaged in any inappropriate conduct following the issuance of the final warning for at least three reasons.

*First*, Fitzgerald's testimony that Stiles touched a female employee's breasts constitutes inadmissible hearsay, as she was not present during the alleged incident, and it therefore cannot be considered on summary judgment.  *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71-72 (2d Cir. 2000) ("second-hand comments . . . reported to the plaintiffs and not supported by affidavits are inadmissible hearsay" and therefore cannot be considered on summary judgment to support a hostile work environment claim); *Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000) (the plaintiff's testimony that co-workers told her of certain harassing statements was inadmissible hearsay on summary judgment for purposes of a hostile work environment claim).

*Second*, the "breast touching" testimony, as well as Stiles' alleged "stripper comment," cannot be considered because neither Fitzgerald nor anyone else reported them to a supervisor. (Fitzgerald Dep. 193:19-24, 197:13-15).  Without such reporting, the testimony cannot avert summary judgment.  *See Quinn*, 159 F.3d at 766-67 (the district court "properly declined to consider" alleged co-worker and customer harassment because the plaintiff "failed to adduce evidence tending to show that [the employer] . . . knew of her harassment"); *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 461 (S.D.N.Y. 2013) (granting summary judgment to the employer because the no evidence showed that the employer "had actual knowledge . . . [or] constructive notice of the harassment").

*Third*, no evidence suggests that the "stripper comment" was improper.  Fitzgerald did not recall the context in which it was made.  (Fitzgerald Dep.  188:15-23).  Stiles testified, however, that he was speaking with a co-worker (with whom he often joked) during a digital happy hour event, and that he jokingly compared her to a stripper because of the amount of glitter she wore. (Stiles Dep. 120:14-25, 121:20 to 122:18; 123:21 to 124:12).[10]  This instance does not render WeWork's response improper.  *Mahler v. First Dakota Title LP*, 931 F.3d 799, 806 (8th Cir. 2019) (an off-color joke was not unwelcome harassment); *Sardina v. United Parcel Serv., Inc.*, 254 F. App'x 108, 110 (2d Cir. 2007) ("a few off-color comments . . . by [the plaintiff's] supervisor and sexually suggestive comments by coworkers . . . d[id] not rise to the level of an objectively hostile work environment").

With respect to Stiles' alleged question of the client, Stiles merely asked "what her relationship status was." (Fitzgerald Dep. 193:9-13).   There is nothing unlawful about that question.  *See Manko v. Deutsche Bank*, 554 F. Supp. 2d 467, 480 (S.D.N.Y. 2008) ("[M]erely inviting a female colleague to socialize after work patently fails to rise to the level of sexual overture," especially where the plaintiff "ha[d] not suggested that [the alleged harasser] persisted in making unwelcome advances, [or that] his statements or conduct were erotic or sexually suggestive").

## B.     Plaintiff Also Cannot Establish A Hostile Environment Claim Under The NYCHRL

Under the NYCHRL, the primary issue is whether the claimant has proven by a "'preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *Suri v Grey Global Grp., Inc.*, 164 A.D.3d 108, 114 (1st Dep't 2018); *Williams v*

---

[10] References to the transcript of Stiles' March 24, 2021 deposition, excerpts of which are attached as Exhibit 19 to the Garland Declaration, are designated as "(Stiles Dep. [page:line])."

*New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009).  The NYCHRL, however, is not a "general civility code," such that an employer can be held liable for "petty slights and trivial inconveniences." *Hernandez v. Kaisman*, 103 A.D.3d 106, 113-14 (1st Dep't 2012) (internal quotations omitted). Indeed, dismissal is warranted if the court determines "that this is a truly insubstantial case in which [the] defendant's behavior cannot be said to fall within the broad range of conduct that falls between severe and pervasive on the one hand and a petty slight or trivial inconvenience on the other." *Id.* at 114-15 (internal quotations omitted). *See Chin v. New York City Hous. Auth.*, 106 A.D.3d 443, 445 (1st Dep't 2013) (affirming summary judgment on hostile work environment claim because the plaintiff had not "demonstrated that she has been treated less well than other employees because of her protected status; or that discrimination was one of the motivating factors for the defendant's conduct").

As discussed above, the conduct in issue occurred over *a few hours on a single day* (May 10, 2019) during Fitzgerald's *thirteen-month employment* with WeWork.  *See* pp. 12-13, *supra*. Courts have held that similar behavior is not actionable under the NYCHRL.  *See Ellison v. Chartis Claims, Inc.*, 53 Misc. 3d 1203(A) (Sup. Ct. Kings Cnty. Sept. 23, 2016), *aff'd*, 178 A.D.3d 665 (2d Dep't 2019) (granting summary judgment on race-based harassment claim where a co-worker made two-comments to him (calling him 'Johnny boy' and 'bitcher') as "these two isolated comments [we]re, at most, petty slights, which cannot have created a hostile work environment."); *Mitchell v. Macy's, Inc.*, 2018 WL 9918137, at *1, *4 (S.D.N.Y. Sept. 25, 2018) (dismissing sexual harassment claims based on the allegation that "a female co-worker 'purposefully exposed her bare breasts to Plaintiff on the salesfloor" . . . "three times over a series of months" as they constituted "isolated incidents" that did not lead to "differential treatment").

Firm:52566637

Further, Stiles' conduct as a co-worker also cannot be imputed to WeWork under the NYCHRL. An employee is held strictly liable under NYCHRL for the acts of an employee or agent when the "employee or agent exercised managerial or supervisory responsibility." N.Y.C. Admin. Code § 8-107(13)(b)(1). Generally, this means that supervisory authority is found where an employee has "the authority to direct daily work activities, hire, fire, promote, transfer, or discipline the plaintiff." *Rivera v. United Parcel Serv., Inc.*, 2015 WL 13345524, at *4 (Sup. Ct. Bronx Cnty. Dec. 24, 2015). Again, Stiles held the same position as Fitzgerald, and therefore not only did he not have the authority to hire, fire, promote, transfer or discipline Fitzgerald, he also never directed Fitzgerald's daily activities and therefore is not a supervisor under the NYCHRL. *See* ).[11] An employer may only be held liable for co-worker harassment und the NYCHRL if "[t]he employer knew of the employee's . . . discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action." N.Y. Admin. Code § 8-107(13)(b).

As discussed above, Fitzgerald cannot make this showing, as WeWork took immediate corrective action, concluding its investigation within a week, and issuing Stiles a Final Warning which cautioned him that any re-occurrence of conduct that violated company policy would end result in termination – and therefore summary judgment is warranted for this reason as well. *See Torres v. City of New York*, 2019 WL 1765223, at *5 (S.D.N.Y. Apr. 22, 2019) (dismissing harassment claim based on two remarks by a fellow officer (one comment was "go eat pussy, you lesbian bitch,") over two years because the employer did not "acquiesce" in the co-worker conduct and "took corrective action by facilitating mediation" with the NYPD Office of Equal Employment

---

[11] *See also Cajamarca v. Regal Entm't Grp.*, 2013 WL 5717119 (Sup. Ct. N.Y. Cnty. Oct. 17, 2013) (an usher was not a supervisor of a box office cashier even though the plaintiff testified that he told her when to take a break or do certain cleaning tasks because evidence showed that he directed her what to do "'[o]n rare occasions under instructions from a manager'" and "usually worked in geographically different location"). *Cf*

Opportunity); *Chapman v. H & R Block*, 30 Misc. 3d 136(A) (1st Dep't Feb. 15, 2011) (granting summary judgment for the employer because the plaintiff had not established "that defendants both condoned or approved of any alleged inappropriate remarks and failed to take remedial action.").[12]

## II.   PLAINTIFF'S GENDER-BASED DISCRIMINATORY DISCHARGE CLAIMS SHOULD BE DISMISSED.

### A.   Applicable Law Under Title VII And The NYSHRL

To establish a *prima facie* case for discrimination under Title VII and NYSHRL, a "plaintiff must establish that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000) (NYSHRL claims are analyzed under the Title VII framework). If the plaintiff meets her *prima facie* burden, "[t]he burden shifts to the [employer] to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005). If the defendant proffers such a reason, then the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons but were a pretext for discrimination." *Id.* (internal quotations omitted). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

---

[12] Fitzgerald has apparently abandoned her hostile environment claim based on disability as she did not address it in her pre-motion letter. (Dkt. No. 37).

Firm:52566637

**B.      Plaintiff's Title VII and NYSHRL Claims Are Without Merit**

**1.      No Evidence Would Allow A Reasonable Fact Finder To Conclude That Gender Was A Motivating Factor In Plaintiff's Termination**

Fitzgerald cannot show that WeWork discharged her under circumstances giving rise to an inference of gender discrimination.  Usually, such inference can be made from "actions or remarks" that could be viewed as reflecting a discriminatory animus, "preferential treatment given to employees outside the protected class," "the systematic transfer of a discharged employee's duties to other employees," or, "upon the timing or sequence of events leading to the plaintiff's termination." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996) (cataloging circumstances that may give rise to an inference of discrimination).

Here, Fitzgerald cannot point to any remarks or actions by the decision-maker (Kondili) that she found discriminatory because of her gender or conduct that shows that WeWork treated her differently than similarly situated employees.  Stiles played no role in the decision to eliminate Fitzgerald's position, and accordingly, his conduct cannot form the basis for this claim.  *See Suri*, 164 A.D.3d at 110-11 (affirming summary judgment for the employer on gender-based termination claims because the plaintiff "pointed to no evidence showing that her discrimination was motivated by discrimination" and the termination decision was not made in consultation with the alleged harasser).[13]

The fact that four of the five employees of the U.S. East team let go at the same time as Fitzgerald were women cannot save her gender discrimination claim because a five-employee sample size is "too small to support an inference of discrimination" and is not limited here to similarly situated employees.  *See Ellison*, 178 A.D.3d at 669 (rejecting a small sample size in opposition to motion for summary judgment on a NYCHRL claim, and noting further that the

---

[13] As discussed above, Duong also played no role in the decision to include Fitzgerald in the RIF.

Firm:52566637

sample is not appropriate where it "does not indicate whether the cited employees are similarly situated") (quotations omitted). Focusing only on these five also fails to account for the total number of male and female employees considered for the RIF and the overall percentage of men and women of the approximately 300 employees across the Company (including ten other employees of both genders in the ES department) separated in April 2020.  *See Montana v. First Fed. Sav. & Loan of Rochester*, 869 F.2d 100, 107 (2d. Cir. 1989) (rejecting plaintiff's argument that she could establish a *prima facie* case of gender discrimination on her Title VII claim because the employer retained five male managers after a RIF while it let a female plaintiff go).

Further, the selection of Fitzgerald and her female co-workers for discharge does not show differential treatment because, critically and most obviously, they were WeWork's only three remaining Associate Project Executives in the U.S. East or West regions of the ES department. (SOF ¶ 58; Kondili Decl. ¶ 21).  Accordingly, no male comparators were treated better because no comparators – male or female – were retained.  *See Cuttler v. Fried, Frank, Harris, Shriver &Jacobson, LLP*, 2012 WL 1003511, at *5 (S.D.N.Y. Mar. 23, 2012) (rejecting the argument that the fact that "no male employee was terminated during the RIF gives rise to an inference of [gender-based] discriminatory intent" as the plaintiff (a female floater secretary) "ha[d] not identified a single similarly-situated male employee who was not terminated, and indeed the record show[ed] that there were no male floater secretaries at the Firm at the time of the RIF or for some time prior to the RIF").

## 2.    WeWork Discharged Plaintiff For Legitimate Business Reasons

WeWork has come forward with legitimate business reasons for including Fitzgerald in the April 2020 RIF.  Across the Company since November 2019, WeWork eliminated the positions of thousands of employees, and Fitzgerald's department shrank from approximately 250 employees globally at its peak to approximately only twenty.  (SOF ¶ 65; Kondili Decl. ¶ 26).  In

23

the April 2020 RIF that included Fitzgerald, WeWork selected all U.S. employees in Fitzgerald's position because it believed that the employees in that junior-most position lacked the skill set compared to more experienced colleagues that would be necessary in a smaller organization to manage a client during the life cycle of a project going forward.  (SOF ¶ 45; Kondili Decl. ¶¶ 16-21; Agarwal Dep. 112:22 to 113:8).

Fitzgerald's disagreement with her managers' assessment of her experience in the pre-deal phase of technical pre-sales, design and architecture (SOF ¶ 53; Agarwal Decl. ¶ 6 &  Ex. 1), is not evidence of pretext.  *See Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 513 (S.D.N.Y. 2012), *aff'd*, 766 F.3d 163 (2d Cir. 2014) (the plaintiff's disagreement with the assessment of her performance and the use of that assessment to select her for discharge in a RIF did not establish pretext for age discrimination); *Wallen v. Teknavo Grp.*, 2019 WL 1435879, at *19 (E.D.N.Y. Mar. 30, 2019) (the plaintiff's "subjective disagreement with the opinion of his employer" who selected him for inclusion in a RIF over a more experienced and better performing co-worker was insufficient to establish pretext).  Even if WeWork made the wrong decision in including Fitzgerald in the RIF, that too is insufficient to establish pretext.  *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons.").  "[I]t is not the role of federal courts to review the correctness of employment decisions or the processes by which those decisions are made." *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009).  Given that WeWork has come forward with legitimate business reasons for Fitzgerald's discharge, which she cannot show are pretextual, her claims fail.

**C.    Plaintiff's NYCHRL Claims Are Without Merit Because She Cannot Show That She Was Treated Less Well Or Establish Pretext**

To establish a NYCHRL *prima facie* case, a plaintiff must show "by a preponderance of the evidence that she has been treated less well than other employees because of [her membership in a particular protected category]." *Williams*, 61 A.D.3d at 78.  The employer may rebut the *prima facie* case by showing "legitimate reasons for its actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015).  "If the defendant satisfies that burden, summary judgment is appropriate if no reasonable jury could conclude either that the defendant's 'reasons were pretextual,'" *id.*, or demonstrate under the 'mixed-motive' framework, that discrimination was a motivating factor in the adverse employment decision. *See Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 113 (1st Dep't 2012).  Fitzgerald cannot establish a NYCHRL discharge claim based on gender.

Fitzgerald cannot show that WeWork treated her less well than similarly situated male employees.  As discussed above, Fitzgerald cannot point to a reliable statistical sample.  *See* pp. 22-23, *supra*.  Nor can Fitzgerald's sample show that WeWork treated her less well than similarly situated male co-workers because it let go all employees in her role.  Further, as shown above, WeWork had legitimate business reasons for selecting Fitzgerald for discharge, and Fitzgerald cannot show that those reasons were pretextual.

## III.   PLAINTIFF'S DISABILITY-BASED DISCRIMINATORY DISCHARGE CLAIMS SHOULD BE DISMISSED.

To establish a *prima facie* case of disability discrimination under the ADA, NYSHRL, and NYCHRL, Fitzgerald must show that (1) she is disabled within the meaning of the statute, (2) she was qualified to hold her position, (3) she suffered from an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Hamburg v. New York Univ. Sch. of Med.*, 155 A.D.3d 66, 73-74 (1st Dep't 2017) (citing *Forrest*, 3 N.Y.3d at 305); *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001).  Under the

Firm:52566637

NYCHRL, to establish the "adverse action" prong of the *prima facie* case, Fitzgerald must show "'that she was treated differently from others in a way that was more than trivial, insubstantial, or petty.'" *Varughese v. Mount Sinai Med. Ctr.*, 2015 WL 1499618, at *39 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 693 F. App'x 41 (2d Cir. 2017).

If Fitzgerald meets her *prima facie* burden, then the burden shifts under all three statutes to WeWork to proffer "legitimate reasons for its actions." *Ya-Chen Chen*, 805 F.3d at 75-76 (discussing burden shifting under NYCHRL); *Hamburg*, 155 A.D.3d at 73 (*quoting Forrest*, 3 N.Y.3d at 305). Under the NYCHRL, "[i]f the defendant satisfies that burden, summary judgment is appropriate if no reasonable jury could conclude either that the defendant's 'reasons were pretextual,' . . . or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Ya-Chen Chen,* 805 F.3d at 76 (internal quotations omitted). An employer can rebut that *prima facie* case by "presenting admissible evidence of 'legitimate, independent, and nondiscriminatory reasons to support its employment decision.'" *Hamburg*, 155 A.D.3d at 73 (*quoting Forrest*, 3 N.Y.3d at 305).

### A.     Plaintiff Was Not Disabled Under The ADA

To claim disabled status under the ADA, an individual must show that she suffers from a physical or mental impairment that "substantially limits" one or more of her "major life activities," such as "caring for oneself, performing manual tasks, seeing, hearing, . . . and working." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(i). To meet this standard, "[the] plaintiff must first show that she suffers from a physical or mental impairment. Second, the plaintiff must identify the activity claimed to be impaired and establish that it constitutes 'a major life activity.' Third, the plaintiff must show that her impairment 'substantially limits' the major life activity previously identified." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002). A plaintiff who alleges a substantial impairment in the major life activity of working must show that she is

'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 137 (E.D.N.Y. 2015) (quotations omitted).

Here, Fitzgerald cannot establish that she suffered from an impairment that substantially limited her major life activities.  While Fitzgerald was diagnosed with anxiety disorder at eighteen years old (Fitzgerald Dep. 230:21 to 231:9), she cannot show that it substantially limited her performance of any major life activity, as she merely took an hour or so to attend therapy appointments during the work day, and the condition in no way impacted her ability to perform her responsibilities.  Accordingly, the Court should grant summary judgment on Fitzgerald's ADA discriminatory discharge claim for this reason.  *See Cody v. County of Nassau*, 577 F. Supp. 2d 623, 640 (E.D.N.Y. 2008), *aff'd*, 345 F. App'x 717 (2d Cir. 2009) (the plaintiff's generalized anxiety disorder was not a disability under the ADA because no medical or other evidence suggested that it substantially limited her ability to work); *Giallanza v. Time Warner Cable*, 2009 WL 857502, at *8 (W.D.N.Y. Mar. 30, 2009)  (the plaintiff did not show that "his general anxiety disorder substantially limited his performance of any major life activity[,] . . . [because] with the exception of a few days off in February, March and April, plaintiff made it into work and d[id] his job").[14]

### B.      Plaintiff Cannot Establish A *Prima Facie* Case of Discrimination

Fitzgerald cannot establish a *prima facie* case of disability discrimination under the ADA, NYSHRL or the NYCHRL because no evidence shows that her discharge occurred under circumstances giving rise to an inference of disability discrimination.  The entire basis of her claims is that she was disabled, but mere membership in a protected category is not a basis for a

---

[14] For purposes of this motion, defendants assume that Fitzgerald suffered from a disability under the NYSHRL and the NYCHRL.

claim.  *See Clemente v. N.Y. State Div. of Parole,* 684 F. Supp. 2d 366 (S.D.N.Y. 2010) (holding that claims of discrimination and retaliation under Title VII "require[] a showing that the employer's allegedly wrongful conduct derived from a specifically prohibited factor … [and] will only survive summary judgment if evidence supports an inference that the employer's conduct was based on one of these factors'").[15]

Fitzgerald's disability discrimination claim should also be dismissed because WeWork dismissed her for legitimate business reasons, and she cannot establish that such discharge was pretextual such that her disability was the real reason for her selection.  As shown above, WeWork selected all U.S. employees in Fitzgerald's position to be included in its April 2020 RIF because employees in that junior-most position lacked the skill set compared to more experienced colleagues that would be necessary in a smaller organization to manage a client during the life cycle of a project going forward.

## IV.   PLAINTIFF'S GENDER-BASED RETALIATION CLAIMS SHOULD BE DISMISSED.

To state a *prima facie* case of retaliation under Title VII and NYSHRL, a plaintiff must show: "(1) that plaintiff was engaged in a protected activity, (2) that defendants knew of the protected activity, (3) that defendants took adverse employment actions against plaintiff, and (4) a causal connection between the protected activity and the adverse action." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (quotations omitted).  Where the fourth prong of the

---

[15] *See also Harricharan v. Air Canada*, 2017 WL 8186647, at *5 (Sup. Ct. Queens Cnty. Nov. 3, 2017) (dismissing disability discrimination claim because the plaintiff failed to proffer any evidence giving rise to an inference of discrimination); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 269 (S.D.N.Y. Oct. 31, 2017) (granting summary judgment where the plaintiff failed to offer any evidence that the employer treated him differently from employees outside his protected group); *Lucas v. Apple Food Serv. of New York, LLC*, 2015 WL 6507495 (E.D.N.Y. Oct. 27, 2015) (dismissing ADA claim where the plaintiff's conclusory allegations were "a paradigmatic example of an unadorned, the-defendant-unlawfully-harmed-me accusation that will not do.'").

*prima facie* case is at issue, the plaintiff can establish a causal connection either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2001). For a plaintiff to rely on temporal proximity alone, the protected activity and alleged retaliation must have occurred "very close" in time. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). The Second Circuit "ha[s] not drawn a 'bright line' as to exactly when a temporal relationship supports a finding of a causal relationship," *Hayes v. Dahlke*, 976 F. 3d 259, 273 (2d Cir. 2020), but "a ten-month period" has been found insufficient. *See Bamba v. Fenton*, 758 F. App'x 8, 12 (2d Cir. 2018).

Under the NYCHRL, "the plaintiff must show that she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am.*, Inc., 715 F.3d 102, 112 (2d Cir. 2013). A retaliation claim "brought under the NYCHRL . . . [is] analyzed both under [the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)] and the . . . 'mixed-motive' framework," which inquires whether discrimination was a motivating factor in the adverse employment decision. *Melman*, 98 A.D.3d at 113.

### A.   Plaintiff Cannot Show That Her Report Of Stiles' Conduct Played Any Role In Her Discharge

Fitzgerald cannot show a causal connection between her May 2019 complaint about Stiles and her subsequent inclusion in a RIF eleven months later in April 2020 (and which followed earlier RIFs affecting her direct team in which she was not included). Such temporal proximity is

Firm:52566637

insufficient to establish causation.  *See Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 182 (E.D.N.Y. 2014) ("passage of approximately six months between [the] plaintiff's complaint and the alleged adverse action d[id] not allow for an inference of causation" and supported summary judgment for the employer); *Toos v. Leggiadro Int'l, Inc.*, 2016 WL 8193183 (Sup. Ct. N.Y. Cnty. Jan. 5, 2016) ("six months [wa]s too attenuated to establish a causal relationship between plaintiff's complaint and his termination").

## B.   WeWork Terminated Plaintiff's Employment For Legitimate, Non-Retaliatory Reasons

Summary judgment on Fitzgerald's retaliation claim is also warranted because WeWork has come forward with legitimate reasons for including her in the RIF.  *See* pp. 23-24, *supra*. Fitzgerald cannot cast doubt on this decision as the only "evidence" of pretext that she can point to is the temporal proximity between her report of Stiles' conduct and her discharge, but "temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010); *see also Bentley*, 935 F.3d at 90 (despite one month between a complaint of sexist comments and discharge, temporal proximity alone could not establish pretext).  For this reason as well, this claim should be dismissed.  *See Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 289-90 (E.D.N.Y. 2010) (the plaintiff failed to show that the employer's stated reason for its action was false and no evidence indicated "that unlawful discrimination was the 'real reason' for [the] plaintiff's termination," and it was not the court's role to second-guess the employer's business decision just because the employee maintained that "her suspicious banking activities were 'explained away'").

## V.   THE COURT SHOULD DISMISS PLAINTIFF'S DISABILITY-BASED RETALIATION CLAIMS.

To state a claim for ADA retaliation, "a plaintiff must allege that: '(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took

an adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Caskey v. Cnty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (*quoting Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)); *Schiavone v. N.Y. State Office of Rent Admin.*, 2018 WL 5777029, at *5 (S.D.N.Y. Nov. 2, 2018) (*quoting Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)).  The standard governing Fitzgerald's disability-based claims under the NYSHRL and the NYCHRL is the same as those governing her gender-based retaliation claims.  *Serdans v. New York & Presbyterian Hosp*, 112 A.D.3d 449, 450-51 (1st Dep't 2013).

### A.   Plaintiff Did Not Engage In Protected Activity And Therefore Cannot Establish A *Prima Facie* Case of Retaliation

These retaliation claims should be dismissed because Fitzgerald did not engage in protected activity as she merely *informed* her supervisors that she would be leaving the office occasionally to attend therapy sessions (and to which they never objected or interfered).  (SOF ¶ 151; Fitzgerald Dep. 111:5-19).  Providing information on one's whereabouts does not constitute a request for a reasonable accommodation or any other protected activity.  *See Nassry v. St. Luke's Roosevelt Hosp.*, 2016 WL 1274576, at *12, *15 (S.D.N.Y. Mar. 31, 2016) (the plaintiff did not engage in protected activity when he informed his employer that he had to be out sick pursuant to its employer's sick-leave policy); *Prisco v. Air Indus. Grp.,* 2017 WL 9485663, at *13 (E.D.N.Y. Sept. 1, 2017), *Report and Recommendation Adopted by*, 2017 WL 4417665 (E.D.N.Y. Sept. 30, 2017) (where the "[p]laintiff merely asked for, and was granted, a half day off" and nothing "indicat[ed] that he asked for such leave as an accommodation for any disability, . . .such leave, c[ould] not under the circumstances in this matter constitute protected activity under the ADA or [the NYSHRL]").

31

Fitzgerald merely arranged her working hours around her therapy appointment.  She never contacted Human Resources or sought permission to attend the sessions from anyone.  She also provided no indication that she required such leave for a disability.  Even if WeWork should have understood her request for leave as an FMLA leave, such a request would not constitute a protected activity under the ADA, NYSHRL or NYCHRL.  *See Brizzi v. Utica Mut. Ins. Co.*, 2021 WL 1163112, at *9 (E.D.N.Y. Mar. 26, 2021) ("A request for FMLA leave, without more, cannot constitute a protected activity for the purposes of an ADA retaliation claim."); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 262 (S.D.N.Y. 2012) ("FMLA leave . . . is not a 'protected activity' under ... the NYSHRL."); *Corrado v. New York Unified Court Sys.*, 163 F. Supp. 3d 1, 25 (E.D.N.Y. 2016) ("FMLA Leave is not a protected activity under the NYCHRL[.]").  Accordingly, Fitzgerald cannot show that she engaged in any protected activity.

### B.      There Is No Evidence Of Pretext

For the reasons discussed above, Fitzgerald cannot show that WeWork's stated reasons for her discharge were pretext for retaliation on the basis of disability.  No one ever interfered in her ability to attend therapy appointments.  (SOF ¶¶ 156-58; Fitzgerald Dep. 97:21 to 98:16, 114:22 to 115:4; Garland Decl. Ex. 18, p. DD000026).  Even if her discharge occurred while she was still attending appointments, she can only point to temporal proximity, which alone is insufficient to establish pretext – and at that time in April 2020 she worked and attended the sessions remotely.  Moreover, she cannot dispute that WeWork selected for position elimination other individuals who have never engaged in any protected activity (*i.e.*, the record contains no evidence that they had).

### VI.    PLAINTIFF'S FMLA INTERFERENCE AND RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE WEWORK DID NOT INTERFERE WITH HER ANY LEAVE AND DID NOT DISCHARGE HER BECAUSE SHE TOOK INTERMITTENT LEAVE.

Firm:52566637

"FMLA claims come in at least two varieties: interference and retaliation." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). "[A]n employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id.* An employee may bring a retaliation claim based on "actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Id.* Fitzgerald alleges both interference and retaliation claims, but neither has merit as WeWork did not interfere with Fitzgerald's FMLA rights and did not discharge her because she attended therapy.

### A.   Plaintiff's FMLA Interference Claim Fails Because She Never Gave Notice Of Need To Take FMLA Leave And Because WeWork Did Not Deny Her Any Benefit To Which She Was Entitled

"[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016); 29 U.S.C. § 2615(a)(1) ("[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise[] any right provided under this subchapter."). Fitzgerald cannot satisfy several of these elements.

*First*, Fitzgerald was not eligible for FMLA leave until March 25, 2020, *i.e.*, 12 months after her March 25, 2019 start date at WeWork. (SOF ¶ 2; Fitzgerald Dep. 33:8-11). *See* 29 U.S.C. § 2611(2)(a) (an employee qualifies for FMLA protection only after 12 months of employment). That means that Fitzgerald's interference claim cannot be based on any conduct that occurred prior to March 25, 2020. *Arroyo-Horne v. City of New York*, 831 F. App'x 536, 539 (2d Cir. 2020)

(holding that a threshold issue for an interference claim under the FMLA is "whether an employee is eligible under the statute to claim its protections").

*Second*, after she became eligible for FMLA leave, Fitzgerald never gave WeWork notice that she required FMLA leave; rather, she unilaterally utilized a continuing flexibility in her schedule.  The case of *Macropoulos v. Metro. Life Ins. Co.*, 2018 WL 1508564, at *13 (S.D.N.Y. Mar. 26, 2018), is instructive.  There, MetLife permitted a flexible work arrangement to the plaintiff (Macropoulos) upon her hire in 2007 by allowing her to telecommute two or three days a week (to take care of her mother) as long as she informed MetLife in advance of the days on which she would telecommute.  *Id.* at *1.  After a new supervisor sought to change that schedule in 2013, she agreed to a fixed telecommuting arrangement on Tuesdays and Fridays only.  *Id.* at *3. Following her discharge, she raised an FMLA interference claim based on that schedule change. The court dismissed the claim, holding that Macropoulos never gave MetLife notice that she required FMLA leave, as opposed to just an arrangement: "Although Macropoulos informed MetLife of her mother's condition on numerous occasions and explained she needed flexibility with respect to in-office time to care for her mother, she never requested any form of leave, including intermittent or reduced schedule leave"; [i]nstead, she sought from MetLife a telecommuting arrangement," which expressed an intention to continue working.  *Id.* at *13.

As in *Macropoulos*, Fitzgerald never requested any form of a leave.  After informing her supervisors in 2019 and early 2020 that she would be attending therapy sessions during working hours, she did so.  After March 25, 2020, when she and others worked remotely because of the pandemic, she continued attending those sessions, but did so by phone, thereby acting in accordance with her prior arrangement.  (SOF ¶¶ 156-57, 163-65; Fitzgerald Dep. 97:21 to 98:16, 114:22 to 115:4, 203:7-10).

*Third*, Fitzgerald was not denied any benefit provided by the FMLA.  There is no evidence that WeWork interfered with Fitzgerald attending a therapy appointment after March 25, 2020 (while she worked remotely), as she attended every weekly session thereafter on March 27, April 3, 10, 17 and 24.  (SOF ¶ 164-65).  (SOF ¶ 164-65; Fitzgerald Dep. 114:22 to 115:4).  Indeed, Fitzgerald conceded that she was never forced to cancel a therapy session at any point during her employment.  (*Id.*).  Thus, WeWork never denied her any benefit to which she may have been entitled and the claim should be dismissed for this reason as well.  *See Sarno*, 183 F.3d at 161 (the plaintiff failed to establish an interference claim because he had received the twelve weeks of leave to which he was entitled); *Stuart v. T-Mobile USA, Inc.*, 2015 WL 4760184, at *4 (S.D.N.Y. Aug. 12, 2015) (finding "fatal defect" in the plaintiff's FMLA interference claim where the employer "approved each and every request for leave that she made").

### B.    Plaintiff Cannot Prevail On Her FMLA Retaliation Claim

In order to make out a *prima facie* case of FMLA retaliation, Fitzgerald "must establish that: 1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for [her] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).  Fitzgerald's retaliation claim should be dismissed for two reasons.

*First*, she cannot maintain a retaliation claim because she did not exercise her rights under the FMLA.  As discussed above, Fitzgerald did not qualify for FMLA leave prior to March 25, 2020, and her informing WeWork that she would attend therapy sessions during that time did not qualify as exercising FMLA-protected rights.  *See Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 318 (S.D.N.Y. 2012) (the employee did not qualify for FMLA protection when he requested a reduced schedule and, therefore, he "did not exercise FMLA-

protected rights").  Further, after she became eligible for FMLA leave, Fitzgerald never requested any leave.  She simply continued a scheduled flexibility arrangement to which WeWork had previously allowed.  *See Macropoulos*, 2018 WL 1508564, at *13 (dismissing FMLA retaliation claim because by continuation a flexible schedule, the plaintiff "did not exercise FMLA rights").[16]

*Second*, as shown above, her attendance of therapy sessions played no role in the decision to eliminate Fitzgerald's position.  WeWork had a compelling legitimate, non-FMLA-related reason for the elimination of her position: the reorganization of Fitzgerald's department which resulted in the elimination of all Associate Project Executives in the ES department (East and West).  Fitzgerald cannot proffer any evidence as to the whether the other employees who were not included in the RIF took FMLA leave – and without such evidence, she cannot show that she was treated differently than employees who had not taken FMLA leave).  Indeed, Fitzgerald's supervisors *supported* her taking time out of the day to attend therapy and no evidence shows that her attendance at therapy was a factor in the decision to include her in the April 30, 2020 RIF – and Kondili had no knowledge of Fitzgerald's therapy sessions at the time he made the layoff selections.  (SOF ¶ 64; Kondili Dep. 82:2-5).  Accordingly, the FMLA retaliation claim should be dismissed.  *See Lievre v. JRM Constr. Mgt., LLC*, 2019 WL 4572777, at *19 (S.D.N.Y. Sept. 20, 2019) (dismissing FMLA retaliation claim because "no evidence of any kind, direct or indirect – other than the timing of his termination – suggest[ed] that his past and/or potential future requests for FMLA leave were a 'negative factor' in JRM's decision to terminate him"); *Coleman v. Prudential Relocation*, 975 F. Supp. 234, 246 (W.D.N.Y. 1997) (granting summary judgment to the employer on FMLA retaliation claim where the plaintiff was let go during a reduction in force

---

[16] Fitzgerald frequently praised Duong for flexibility he gave her to miss work for a variety of personal reasons, including therapy. (SOF ¶157-62; Fitzgerald Dep. 97:21 to 98:16, 115:24 to 116:12,116:16-24; Garland Decl. Ex. 18, p. DD000026, 36, 38, 43 & 55).

because "the record [wa]s simply devoid of evidence that anyone at [the employer] ever tried to make it difficult for him to take medical leave.").

## VII.   PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE WITHOUT MERIT.

As for Fitzgerald's NYSHRL and NYCHRL aiding and abetting claims, Duong and Stiles can only be liable if "the employer's conduct has also been found to be discriminatory." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 337 (S.D.N.Y. 2020) (internal quotations omitted).   Because WeWork cannot be liable to Fitzgerald either under the NYSHRL or the NYCHRL for all the reasons discussed above, the aiding and abetting claims against the individual defendants should be dismissed as well.   *See Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015) (stating that under the NYCHRL "'before an individual may be considered an aider and abettor,' liability 'must first be established as to the employer'"); *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490-91 (S.D.N.Y. 1999) (granting summary judgment in favor of perpetrator of racial comments because no liability was established as to employer).

Fitzgerald's direct liability claims against Duong should be dismissed because under both the NYSHRL and the NYCHRL, liability is limited to those individual employees "who actually participate[d] in the conduct giving rise to plaintiff's claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995).   *See also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (NYSHRL retaliation and NYCHRL discrimination and retaliation claims only permit direct liability where the alleged wrongdoer actually participated in the retaliatory or discriminatory conduct).   No evidence suggests that Duong engaged in any conduct on the basis or gender or disability against Fitzgerald; indeed, he was not involved in the discharge decision (SOF ¶ 62; Duong Dep. 41:3-6, 56:5-8) and therefore cannot have any direct liability.

Stiles also cannot be directly liable to Fitzgerald under either the NYSHRL or the NYCHRL.  As for Fitzgerald's discrimination and retaliation claims related to the termination of her employment, Stiles played no part in Fitzgerald's discharge (SOF ¶ 62; Duong Dep. 41:3-6, 56:5-8; Stiles Decl. ¶ 10) and thus cannot have direct liability.  Additionally, direct liability under the NYSHRL only applies to employees who "'ha[ve] any ownership interest'" or "'any power to do more than carry out personnel decisions made by others.'"  *Tomka*, 66 F.3d at 1317 (*quoting Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984)); *see also Malena*, 886 F. Supp. 2d at 366 (dismissing the NYSHRL claim because the individual defendant had no ownership interest and "did not have authority to hire or fire Plaintiff or to unilaterally set Plaintiffs' schedule, hours, or salary.").  Since Stiles, as Fitzgerald's co-worker, had no ownership interest in WeWork or any power to hire or fire her, he cannot be liable to Fitzgerald under the NYSHRL.  This is not only true for her discrimination and retaliation claims, but also her hostile work environment claim.

Finally, as for Fitzgerald's NYSHRL and NYCHRL hostile work environment claims, Stiles cannot have direct liability because under the NYSHRL, he did not subject Fitzgerald to conduct that was sufficiently severe or pervasive to be actionable, and under the NYCHRL, evidence is lacking that he treated her differently because of her gender (particularly because it is uncontested he made a similar "cuddling" comment to a male co-worker). (Stiles Dep. 75:19 to 76:17).  Accordingly, these claims against Stiles fail for this reason as well.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant the motion for summary judgment and dismiss the Amended Complaint in its entirety.

Firm:52566637

Dated: New York, New York                    EPSTEIN BECKER & GREEN, P.C.
      June 29, 2021


By: _____*/s/ David W. Garland*_____
      David W. Garland
      Matthew S. Aibel
875 Third Avenue
New York, New York  10022
dgarland@ebglaw.com
(212) 351-4500
*Attorneys for Defendants*

Firm:52566637